SVEA INS. CO. et al. v. VICKSBURG, S. & P. RY. CO.

(Circuit Court, W D. Louisiana. February Term, 1907.)

1. INSURANCE—PAYMENT OF LOSS—SUBROGATION OF INSURER.

An insurance company, which paid a loss to the owners of cotton destroyed by fire, is subrogated to the right of such owners to maintain an action against a railroad company to recover damages, on the ground that the fire was caused by its negligence; such action being subject to the same defenses that might be invoked against the owners of the cotton had it been brought by them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1506.]

2. NEGLIGENCE—ACTIONS FOR DAMAGES—DEFENSE OF CONTRIBUTORY NEGLIGENCE.

In such an action, contributory negligence of a compress company, which had possession of the cotton as bailee at the time it was destroyed, is imputable to the plaintiff, and constitutes a defense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 130, 140.]

3. RAILROADS—FIRES—SUFFICIENCY OF EVIDENCE OF NEGLIGENCE.

A verdict holding a railroad company liable for the value of cotton destroyed by fire, on the ground that the fire was negligently caused by one of its engines, held not supported by the evidence, on the ground that, while it warranted a finding that the fire was caused by sparks from the engine, it did not support a finding either that the engine was improperly constructed or defective, or that it was negligently operated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1733, 1735.]

4. SAME—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad company to recover damages for negligently setting fire to and destroying a quantity of cotton in the operation of one of its engines, it was shown that, however well constructed an engine might be, or however carefully it might be operated, sparks would be thrown from its smokestack which would endanger inflammable material within a distance of 30 or 40 feet; that the cotton was at the time in the possession of a compress company as bailee of the owners, which company, with the consent of defendant, had extended the platform next its building over defendant's right of way to within less than 10 feet of a yard track on which the engine alleged to have set the fire was engaged in switching cars; and that the cotton in bales was piled on such platform. It was, also, shown that the compress company kept barrels of water at hand, and employed a watchman, whose duty it was to keep the barrels filled, and to keep watch and guard against fire. At the time of the fire, the watchman had gone away in violation of his duty, although both he and the manager of the compress who was in the building knew that the engine was being operated on the track. If he had been present, it appeared probable that he would have discovered and extinguished the fire before damage was done. Held, that the compress company, in so constructing its platform and placing the cotton thereon, assumed such risk as arose from the operation upon defendant's track of a properly equipped engine operated with due care and regard for the exposed cotton, and it

was its duty to guard against such risk; that its failure to have a watchman on duty, as it had undertaken to do, tended strongly, if not conclusively, to establish the defense of contributory negligence and preclude a recovery against the railroad company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1681.]

At Law. On motion for new trial.

The following is the charge to the jury:

The plaintiff, a fire insurance company, having paid $4,375, the sum for which it insured the compress building, and having paid $55,506.92, its loss on 1,150 bales of cotton which were destroyed by fire while in possession of and on the platform of the compress company, is now entitled, as the subrogee of the several persons to whom the losses were paid, to sue defendant company for damages on the cause of action declared on in the petition. The plaintiff company is seeking to recover as damages against defendant railway company the sum of money which it paid its several assignors. The allegations of the petition show that through or by defendant's negligence flying fire sparks from defendant company's engine caused the fire which fell upon and destroyed the cotton. Under the view of the court the plaintiff company, as the subrogee, is entitled to sue the defendant company for damages under the same rules of law, substantially, that would have or could have rightfully been invoked by or against the owners of the destroyed cotton on the trial of a suit instituted by themselves charging the railway company with negligence. The court, now considering and disposing of, the issue as to the liability of the defendant company for the amount paid by the insurance company to the compress company for its fire loss on its building, charges you that no recovery on that demand can be had against the defendant company. The court is of the opinion that the terms of the contract exhibited to you between the compress company and the railway company in relation to it, the compress company being permitted to extend its platform on and over the railway's right of way, forbids the compress company to claim damages in this case.

There are several issues of fact suggested in the evidence, upon which are founded the contradictory contentions of counsel on either side of this case. The burden of proof is on the plaintiff to establish by a preponderance of proof its contentions on the material issues.

The plaintiff contends that the preponderance of evidence shows that flying sparks, thrown from the smokestack of defendant's engine, fell upon and set fire to the cotton in question. It contends that the defendant railway company was guilty of actionable negligence in carelessly operating its engine at the time such fire sparks fell upon and set fire to the cotton. It contends that, considering the character of the work the switching engine was engaged in and the environmental surroundings in the midst of which the engine was switching cars, the defendant was guilty of negligence, because the engine operated by the railway company, at the time the flying fire sparks fell upon the cotton, was not such a reasonably safe engine in its equipments as the railway company should have used in doing such work as they were doing at the time and place in question. It contends that the spark arrester then being used in the engine was so defective or faulty in its construction, or damaged by use, that such large and dangerous inflammatory flying fire sparks were thrown from its smokestack, as would not or should not have been thrown from the smokestack of an engine with a spark arrester in a reasonably safe condition. Plaintiff contends that the unusually large, dangerous, flying sparks were thrown from the smokestack onto the cotton because of the defendant's negligence in using a spark arrester which was in a bad and damaged condition. It contends that, considering the situation and surroundings present and known to the engineer, the engineer, at the time the flying sparks from his engine fell upon and destroyed the cotton, was operating his engine carelessly, and in so doing he was then guilty of negligence, which was the proximate cause of the fire. It contends that the careless operation of the switching engine is shown by the rapid speed at which it was running

and by the excessively hard exhaust of its engine, when close, alongside of, or near to the compress. platform.

On the other hand, the defendant denies all the plaintiff's contentions on such material issues, and says its engine in use at the time of the fire was well constructed and all its equipments were in good condition and reasonably safe for any work it might be engaged in, and that its spark arrester was of the best approved construction, and an inspection made by witnesses in court, a few hours after the fire, showed that it was in good condition and repair. The defendant railway company contends that there was no actionable negligence in the operation of the engine at or near the compress building platform. It says that the undisputed evidence in the case shows that, however carefully an engine may be operated, or however perfect the spark arrester may be, or however good its condition may be, fire sparks will fly from a running engine's smokestack, and may endanger inflammable material within the range of these flying sparks. It shows that such facts were well known to the compress company when it constructed its platform several feet on and over the railroad's right of way, as well as they were to the engineer, who frequently or daily had to run his switching engine close alongside of the compress platform, where more or less cotton bales were often lying on the platform. The defendant company says that the engineer then running the engine is shown to be a careful. skillful engineer, and that he swears that, with a full knowledge of such conditions, he, on that day and at that time, as on other days, ran his engine, when near the compress building, carefully. to avoid and lessen the danger, as far as practicable, of setting fire to the inflammable things in the midst of which he had to do his daily switching work in the railway yards. The defendant company contends that, if flying sparks from its engine set fire to the cotton, such sparks were only of such character as in the nature of things might fly from the best-equipped engine, and it was not in any way guilty of the negligence which was the proximate cause of the fire and loss therefrom.

The defendant, for its further defense, says the plaintiff company, chargeable in this action, as it should be, with the carelessness of the compress company, was guilty of contributory negligence, which was the proximate cause of the loss, by the cotton exposed and unprotected, as it was, on the compress platform. It contends that Miller, who was the superintendent of the compress company, knew of the place and inflammatory condition of the cotton at the particular time the engine was switching close, within a few feet, along the side of the compress platform, and he knew of the danger to the exposed cotton from the fire sparks thrown from the engine. The defendant says that Miller, a witness, says he heard flying fire sparks falling on the compress roof, and that he had been, only a few minutes before the fire, on the platform, tagging the cotton bales on which the fire began. The defendant contends, on this view of Miller's evidence, that the compress company was guilty of contributory negligence in not being more vigilant in protecting the cotton from flying fire sparks. The defendant contends that the plaintiff company, knowing, as it did, the danger of fire from its own machinery, as well as from flying fire sparks thrown from passing engines, even where such engines may be free from actionable negligence in throwing fire sparks from its smokestack, was chargeable with the duty of exercising prudential or reasonable care in caring for and protecting its patrons' cotton, left on the platform, from such dangers of fire as were in the nature of things inherent in or incidental to the operation of the railway company's engines, and manifestly incidental to the physical environments of the place. The defendant contends that this failure of the compress company. under such circumstances, to exercise reasonable care in so protecting the cotton left on its platform, makes plaintiff company guilty of contributory negligence.

The railway company shows that the plaintiff company, having projected its platform over the railroad's right of way, which platform it daily used for receiving and shipping its cotton over the railway, in or from its own view of the constant danger in the environments, and from its own proper sense of duty to its patrons, whose cotton bales were left exposed on the platform, had at the moment of the fire for its use, as it had during the working season, a number of water barrels filled with water ready to use in ex-

tinguishing fire sparks that might fall in or about the cotton, and the plaintiff company, to promptly meet emergencies, had in its employment, and had on the day of the fire, a man by the name of Butler, whose only duty, it seems, was to keep the water barrels filled and put out flying sparks from passing engines that might endanger the cotton. Butler's own evidence shows that he was in the building 15 or 20 minutes before the fire. He had filled some barrels with water. His duty was to keep barrels filled and look after fire—to notice sparks and cinders. He says he happened to slip off from Capt. Miller that day, and "the train came in on me. I knowed it was my duty to stop then, for it was my business to look out for sparks." He says the captain always told him to keep a lookout for sparks when the engine was running on the compress track. He says he was some distance away from the compress when the fire occurred, and couldn't get back. Just before the fire he slipped away. He says, if he had been up there with a bucket of water, he could have done something to put the fire out. He says it was a matter of general talk and notoriety that there was danger when there was switching in there, on account of cotton being close to the track, and he was there especially to watch the cotton.

The argument of defendant company's counsel suggests that Butler's evidence, offered by counsel for plaintiff company, shows that the compress company, in employing Butler and assigning such special service to him, was manifestly giving expression to its interpretation and appreciation or understanding of the dangers inherent in the mutual relations of the two litigant companies; that in so using its employé, Butler, it showed its knowledge of and assumption of such dangers and risks as would menace its cotton, even when the railway company was running its engines over the compress track with all reasonable care for the situation. The defendant contends that, if flying sparks from its engine were thrown on the cotton, whether such sparks were large or small, and Butler had been present, as it was his duty to be present, to perform the work assigned to him by his employer, the compress company, all danger from such flying sparks would have been avoided. It contends that he would and could have extinguished the spark, or several sparks, which by his negligence ignited the cotton. The evidence seems to show that the fire occurred just after Miller heard the sound of falling cinders on the metal roof, and at the time when Butler, as he says himself, was away from the place or his post of duty.

Taking up the material issues of fact, I suggest to you that you determine first whether or not sparks from the defendant's engine set fire to the cotton. Of course, you will go no further, if you find adversely to the plaintiff company on that issue. Next take up the issue of contributory negligence on the part of the plaintiff company. I suggest that you, secondly, consider that issue, because, if you find adversely to the plaintiff—that is, if the plaintiff was guilty of such contributory negligence as was the proximate cause of the fire loss—the plaintiff cannot recover. In any view you may take of the facts, there can be, for our purposes, but one proximate cause of the damage or injury in this case. The proximate cause of the fire may not under the evidence be chargeable to either party in this suit. The fire may have occurred without actionable negligence of defendant company, or it may be of either party to the suit. The plaintiff company, in order to hold the defendant liable, must show you by satisfactory proof that the proximate cause of the loss or damage sued for was in the negligence of the defendant company. The defendant company may, in your view of the evidence, be guilty of some negligence; but, to charge and hold it liable for damages, the evidence must show that its negligence was the proximate cause of the loss.

Actionable negligence consists in the neglect of the use of ordinary care or skill towards a person to whom the defendant, by implication of law or in the nature of things, owes the duty of observing ordinary care and skill, by which neglect plaintiff, without contributory negligence on his part, has suffered injury to his person or property. The proximate cause, in the law of negligence, is such a cause that approximately produces the particular consequence without the intervention of any independent, unforeseen cause, without which the injury would not have occurred.

So much has been said by counsel as to the spark arrester not being ex-

hibited in court that it may be well for me to say that the presence or absence of the spark arrester may be a circumstance more or less suggestive of flying fire sparks from zealous, heated, contentious of learned counsel; but it is hardly a material issue for you, gentlemen, to worry about. The defendant company has shown you by several eyewitnesses its condition a few hours after the fire, when it was inspected by them. If the spark arrester was in the court, its identity would have to be shown by oral evidence—possibly by the same eyewitnesses. The defendant has shown you its condition by oral evidence. You may believe such witnesses, if you choose, just as you might or might not believe eyewitnesses to its identification.

Now, reverting to the conflicting disputes of counsel, I charge you, if you find from the evidence that the defendant railway company was guilty of negligence in using a spark arrester which was not a reasonably good implement for its uses at the time and place, to wit, at the time of the fire, and because of its faulty condition of construction or want of repair inflammable fire sparks of an unusually large and dangerous kind were thrown out of the smokestack, so as to set fire in the cotton, and you believe that the defendant railway company, in using such a faulty spark arrester, was guilty of negligence, which the evidence shows was the proximate cause of the fire, you should find for the plaintiff company. I charge you it is the duty of the railway company, in the equipment of its engines and operation of its engines, to use ordinary care and diligence to prevent fire from being communicated from such engine to the property of other persons. By ordinary proper care and diligence is meant such a degree of care and diligence as careful railroad men, such as trained engineers, should, from a proper, reasonable sense of duty, exercise under the conditions or circumstances where or in which they may be operating.

The degree of care and diligence required in a case like this should be commensurate to or proportionate to the amount of danger probably consequent in a failure to exercise such care. A failure to exercise reasonable care in the discharge of a duty implied in or by the pending conditions is negligence, and, if such failure to exercise reasonable care was the proximate cause of the fire, the defendant would be liable. If you find that the engineer, at the time flying sparks are said to have fallen on the cotton, was guilty of negligence in carelessly operating his engine, and you believe that to said negligence is chargeable the proximate cause of the fire, you should find for the plaintiff. If you believe the spark arrester in the engine was reasonably well constructed and was in good condition of repair, even though some flying sparks may have fallen in the cotton, you should not find defendant guilty of negligence.

You will observe that I say, even though some flying sparks from the engine may have fallen on the cotton, defendant may not be liable. I say that because it is conceded substantially by counsel that flying sparks may be thrown from a running engine, however well constructed it may be, or however good its equipment may be. In view of the environmental conditions or surroundings at the place and time of the fire, if you find that the engineer, in operating the engine reasonably safe in its equipment, was running it carefully and with reasonable care for the conditions about him, even though some sparks may have been thrown from the smokestack of the engine, you should not find the defendant liable for damages. You will note that I say this to you because the defendant company, when or while it may be carefully or skillfully using a well-equipped engine, is or was engaged in the lawful exercise of its railway work, and in so running its engine it was minimizing, as far as practicable, the dangers of the situation. I say this, too, because it was not the legal duty of the defendant company, in using its implements of industry in its own railway yards, to eliminate all elements of possible danger in or to the things in or of the situation. To require such an elimination of danger would be tantamount to prohibiting the use of its engines in railway yards, in or near which men may erect or carry on a cotton compress plant. In addition, I say this to you because, even under the most careful and skillful operations of a well-equipped engine, running within a few feet of such a number of cotton bales, exposed as that cotton was on the compress platform, all elements or degrees of danger from flying sparks cannot be eliminat-

ed, and in the nature of things there will, even under such favorable conditions, or may be at any time some remaining degree of danger of flying fire sparks falling on inflammable material. To state it differently: After such danger as seems to be inherent in operating an engine, under such conditions as were in the situation when fire was set to the cotton, has been or is diminished as far as may be practicable by careful equipment and management of the engine, it appears from the evidence there may remain or be left some degree of possible, or maybe probable, danger. In such a state of case the risk of such danger as may so remain, whatever it may be, is or was assumed by the compress company, when it built its platform over the railroad's right of way.

As between the parties to this suit, the contributory negligence of a bailee of cotton, whereby it was consumed by fire proceeding from a railway engine, is imputable to the owners of the cotton. If you find that the plaintiff company, through the fault of the compress company, for which it is chargeable, was guilty of contributory negligence, in not with reasonable care looking after and protecting the cotton from such dangers as were known by or to the compress company's servants to be inherent in the physical conditions of the time and place, and you believe such contributory negligence was the proximate cause of the fire loss, you should find for defendant company. In considering the matter as to the contributory negligence of the plaintiff company being the proximate cause of the fire sparks igniting and consuming the cotton in question, you will see that counsel for defendant company says that plaintiff company was guilty of contributory negligence, after the fire sparks fell on the cotton, in not extinguishing the fire sparks that fell upon and ignited the cotton. It contends that the engine was of good construction and repair, and was, in fact, being operated with reasonable care, and, if flying sparks from the engine did fall on the cotton, there was no actionable negligence chargeable to the conditions of or the operation of the engine; but the compress company was guilty of negligence in not meeting that danger, it being one of its assumed dangers, and extinguishing the fire sparks before they ignited the cotton. If you believe this contention established by the proof in the case, you should find for the defendant company.

In the nature and reason of things, both litigant parties knew they were charged with mutual duties towards each other. Your knowledge of the evidence may or should enable you to see how or in what manner the parties respectively understood and construed the relations to each other, when engaged in the exercise of their lawful industrial activities. Such knowledge should have a persuasive value in enabling you to determine one way or the other the issue of negligence. Such duties as I speak of are not of a statutory nature. They are formulated in the reasonable relation of things, and inhere, if they exist at all, in the implications of law regulating the conduct and duties of men towards each other. Such duties are implied in the thought, common to all of us, that a man engaged in the pursuit of lawful industries should use all the means at hand, reasonably necessary, under the circumstances, to avoid injuring another.

In my purpose to consider and advise you on some matters suggested in some of the requests for instructions submitted by counsel, I want to add that the undisputed evidence, illustrated as it is by the argument of counsel on either side, seems to show that the compress company, in the nature of things, or in its relations to the defendant railway company's daily operation of its engines over the tracks of its own yard, assumed more or less of the risks manifest in or inherent in the dangers from flying sparks to which its cotton was exposed when stored or lying on the compress platform. The evidence shows, too, as we have seen, that there was some degree of danger manifest in or inherent in the situation which threatened the compress company's cotton every time a passing engine ran over or near to the compress switch track, which could not be eliminated or entirely avoided, even though such engine was free from fault in its construction or equipment and operation. The evidence, as I have said to you, shows that there were some risks, manifest in or inherent in the dangers of the situation, which could not be eliminated from the activities of a well-equipped passing engine, operated with due regard to the inflammable cotton on the platform. Such

risks as are suggested in this view of the evidence were assumed by the compress company, and, if you find that flying fire sparks fell upon the cotton from defendant's engine at a time when it was being operated with such reasonable care as I have mentioned, the defendant railway company cannot be held liable for the fire loss.

On the other hand, if you believe the passing engine was not of reasonably good construction and equipment, and such fire sparks were thrown from its smokestack on the cotton as should not or would not have been thrown upon the cotton from a well constructed and equipped engine, the defendant company is liable for the fire loss. Again, if you believe the passing engine, though reasonably well constructed and equipped, was not at the time and place carefully operated, and the defendant company's negligence was the proximate cause of the fire loss, the defendant company is liable for the sums paid by the Svea Insurance Company to the several owners of the cotton.

A. A. Armistead, M. C. Elstner, John Land, and E. T. Lamkin, for plaintiffs.

Wise, Randolph & Rendall, for defendant.

BOARMAN, District Judge. The plaintiff, a fire insurance company, having paid fire losses to the several owners of 1,150 bales of cotton amounting to $55,506.92, which was stored and destroyed in a compress building, now, as subrogee of the several owners of the cotton, sues the defendant railway company in action or tort for damages. The plaintiff company, also, in this action, sues to recover $4,375 paid by it on a fire loss to the owners of the compress building.

Under the view of the court, the plaintiff company, as subrogee, is entitled in this cause of action, to sue the defendant company for damages under the same rules of law, substantially, that would have or could have been rightfully invoked by or against the owners of the destroyed cotton on the trial of a suit instituted by the said owners for themselves, charging the defendant railway company with such actionable negligence as was the proximate cause of the fire loss. The court now, considering and disposing of the issue as to the liability of the defendant company for the amount paid by the plaintiff company to the compress company for its fire loss on its building, is of the opinion that no recovery on that demand can be had against the defendant company.

The terms or conditions of the contract between the compress company and the railway company, in relation to the compress company being permitted to extend its platform on and over the railway's right of way, forbids the plaintiff company to recover damages in this case against the defendant railway company. The owners of the cotton in question consigned the same to the compress company for the purpose of having it compressed. As soon as the cotton came into its possession, and as long as it so remained, I think the compress company occupied the relation of bailee for, or to, the owners of the cotton which was destroyed by fire while in the possession of the compress company. For the purposes of disposing of this matter, the plaintiff insurance company will be treated as if, in law and fact, it stood at the time of the fire, as the compress company did, in the relation of the bailee of the owners of the cotton in question.

Considering, for the purposes of the pending matter, the legal relations of the parties to this suit to be as I have just suggested, it fol-

lows that the plaintiff company was charged, as between itself and the defendant company, with more or less of the duties which are by law or in the nature of things imposed on a bailee.

On the trial of the merits of this case,.the burden of proof was on the plaintiff company to show, by a preponderance of evidence: First, that the cotton which was destroyed in the fire was set on fire by flying sparks thrown from the defendant company's engine, which at the time was being operated in its railroad yard on tracks near to or running lengthwise alongside of the compress company's platform. Second, that considering the nature of the physical conditions and environments of the immediate place and locality in which the engine was engaged in switching work, and considering the degree of reasonable care with which the law, under the conditions and circumstances of the moment, charged the defendant company, the spark arrester of the engine was not such an instrumentality as the defendant company, in response to its legal duty, should have had in its use, and the railway company in using such a defective engine at the time and place was guilty of actionable negligence. Third, that the engineer, in operating the engine, was guilty of such negligence as was the proximate cause of the fire loss of the cotton on the compress platform.

On the trial of the case, it appears that the weight of the evidence fairly supported the first proposition; that is, that the fire was caused by flying sparks thrown from the engine falling on the exposed cotton lying or stored on the compress platform. I think it was equally as clear from the evidence that the spark arrester of the engine from which the flying sparks were thrown, so as to ignite the cotton, was reasonably well constructed, and was then in a reasonably safe condition for the company's use.

It seems that all the witnesses having any personal knowledge of the conditions of the spark arrester or of the engine being operated, at the time of the fire, uniformly state in their evidence that the spark arrester was well constructed and was kept in, and was at the time in, good repair. It appears, too, that all the witnesses connected with the operations of the engine, contemporaneously with the fire, uniformly stated that the engine was being operated by the engineer on that occasion, with reasonable care and consideration for the conditions and environments of the situation and locality. These expressions of the court's opinion, on the law and issues of fact involved in the three propositions named, seem sufficient to authorize the granting of a new trial; but I desire in determining the pending matter to give expression to the court's view as to the special contention of counsel for the defendant company, that the compress company, as bailee of the cotton in question, was guilty of contributory negligence, which was the proximate cause of the fire loss, and which should, in passing upon this matter, be charged to the plaintiff company.

As between the parties to this suit, I think the contributory negligence of a bailee of cotton, whereby it was consumed by fire proceeding from a railroad engine, is imputable to the owners of the cotton.

The insurance company readily paid the losses to the owners of the cotton. As between the insurance company and such owners, it may be that no legal defense against paying them could have been success-

fully grounded on the negligence of the compress company in not avoiding or extinguishing fire sparks which set fire to the cotton while the compress company, as bailee, was handling the same. Let that be as it may, it does not follow that if the owners of the cotton, being without insurance on this cotton, were now suing the defendant railway company for damages because the cotton was set fire to by flying sparks from the defendant's passing engine, such a litigant should recover against the railway company under the evidence in this case and under the rules of law applicable thereto.

The relations and mutual obligations of the litigants in a suit by the owners of cotton to recover a fire loss on an insurance policy would be shown in the obligations and warranties of the insurance contract. As such contracts are usually written, an insurance company could not resist payment to the owner of cotton on a fire loss because their bailee was guilty of contributory negligence. Notwithstanding the evidence should show such contributory negligence of a bailee, as appears in this case, the insurance company would have to pay the fire loss to the owners of the cotton. If the men appearing as the owners of the cotton in this case were now suing the defendant railway company for damages because of its negligence in setting fire to the cotton in question, the cause of action would be on a tort. It is clear that the rules of law applicable in such a suit—the evidence being the same as in this case—would be essentially different from legal rules applicable at the trial of a suit on a contract of insurance.

Treating the insurance company as if it stood in the shoes of the compress company at the time of the fire and imputing to the insurance company the contributory negligence charged against the compress company, the bailee of the several owners of the cotton, and applying such rules of law as should be applied if the several owners of the cotton, instead of the insurance company, were now suing the defendant railway company for damages, it is clear that there were mutual or reciprocal duties which the law imposed on either litigant in this case, engaged, as they were, at the time of the fire, in the activities of their legitimate business. Such duties as are suggested here are not of a statutory nature. They are formulated in the reasonable relation of things, and they inhere, if they exist at all, in the implications of law regulating the conduct of men who may be engaged in such business as the litigants (the compress company and the railway company) were at the time of the fire. Such duties are implied in a rule of conduct, approved by the common thought that men engaged in lawful industries should be mindful of the rights of others and carefully use all means at hand, reasonably necessary under the circumstances, to avoid injury to the property of others.

Counsel in argument conceded substantially that. however well constructed an engine may be, or however carefully it may be operated. some flying sparks will be thrown from the smokestack which will carry danger to inflammatory material situated within 30 or 40 feet of a passing engine. The evidence shows that the compress platform was projected over the railway's right of way within less than 10 feet of the company's track. It follows that all damages from such a cause —that is, from a passing engine so equipped and operated—cannot be

entirely eliminated; to require such an elimination of the dangers would be to forbid a railway company to use its engines near to or by a compress plant. Under the suggestions just made, it is clear that the compress company, in the nature of things, knew of and assumed some of the risks which inhered in the physical conditions of the situation. The compress company, bailee of the several owners of the cotton, should be charged with assuming all such risks as at any time might be present when or where a reasonably safe engine, being operated with the due care and consideration for the exposed cotton, was running over the tracks near by the compress platform.

The compress company was, at the time of the fire, not actually engaged in compressing cotton bales. Its machinery was idle. Its crew were engaged in handing cotton on the platform, presumably its employés had sufficient time to look after dangers to the cotton. There were a large number of bales of cotton stored, apparently for the moment, on the platform, which, in the nature of things, were more or less exposed to damage by fire sparks from a running engine. It may be that there was no negligence chargeable to the compress company in having such a number of bales of cotton stored, uncovered or unprotected, as they were, on its platform. It may be that the cotton bales were so kept or placed on its platform in the ordinary and necessary daily operations of its compressing business. A few minutes before the fire occurred, Miller, the manager of the compress company, was engaged in inspecting or tagging the cotton bales. At the time of the fire, the railway company was operating its engine over the yard track for the purpose of switching its cars from place to place over its tracks in the railway yard.

The compress company knew of the railway's daily use of its yard tracks, and of the conditions and dangers which necessarily attended the railway's daily operations. Both the litigant companies had full knowledge of the inflammable character and conditions of the several hundred bales of cotton that were often exposed, uncovered, and unprotected from fire on the compress platform. Such facts, being known to the engineer, should have made him (as he swears it did make him) careful in operating his engine on the track running near to or close by the compress company's platform, on which he says he knew there were often, more or less, exposed cotton bales. The engineer says he had in mind and knew of such dangers, and he, under such circumstances, always carefully operated his engine; that he knows he was operating his engine carefully that day. The physical environments and conditions fully known, as they were, to either of the litigant companies (considering the compress and railway company as such parties), suggested the nature of the reciprocal duties with which the law charged either of the parties, inter sese, to this suit.

There was much conflicting evidence relating to the second and third proposition; that is, as to how or in what manner, whether carelessly or carefully, as to the immediate conditions, the engineer, when running his engine close to the compress platform, operated his engine. Several of the plaintiff's witnesses point out, in detail, how negligent and indifferent, as to the things in the locality, the en-

gineer operated his engine at the time in question. Some of the plaintiff's witnesses said that on other occasions similar to the one in question, unusually large sparks were thrown from the smokestack of the engine. Other witnesses for plaintiff said, substantially, that the engineer, at or about the time of the fire, ran very fast over the track near to the platform, and the engine's violent exhaust caused large fire sparks to fly from the engine, and that such acts showed negligence and carelessness in the operation of the engine.

It is not necessary, for my purposes now, to recite in detail either plaintiff's or defendant's evidence on these issues of fact. Much, if not all, the evidence of a direct nature tending to show the engineer's negligence, was given by witnesses for plaintiff who were more or less at some distance from the engine or compress building, and not in any way engaged in the operations of the switching work. They were mostly casual lookers-on at the switching movements of the engine in the yard. The engineer, fireman, and conductor, and other witnesses who were engaged actively in operating the switch engine state that all the operations of the engineer and engine were characterized by reasonable care and consideration for the conditions and environments of the situation.

I am not disposed to agree with the strenuous contention of plaintiff's learned counsel that the defendant's witnesses—mostly railway employés—as to material incidents at the time of the fire, were not credible witnesses because they were prejudiced in favor of the defendant railway company. Of course, their relation to the railroad company may have given some favorable coloring to their statements in favor of the railway company. It was equally apparent during the trial that local surroundings and circumstances may have, in some degree favorably, for plaintiff's contentions, colored the views of some of the plaintiff's witnesses. One familiar with such trials cannot be unmindful of such influences on either side of an issue like this. One learns from experience in such trials to scrutinize the weight of contradictory testimony. If the witnesses of either side were disposed to give false evidence, their opportunities respectively for indulging in perjury were possibly equal; but, conceding that the several witnesses, on either side, who gave testimony as to such material issues as relate to the carelessness and negligence displayed in the activities of the engineer and engine, were possessed of equally good motives and purposes to tell the truth as to such instances, it is clear that the employés of the railroad company who were at the time of the fire actively engaged in operating the engine, and engaged in the switching work over the railway's yard tracks, had much better opportunities for seeing, noting, and observing the movements of the engineer and engine than the several witnesses for plaintiff company, whose evidence was more or less of a circumstantial nature. The engineer, fireman, conductor, and other employés engaged in all the activities of the moment, in their testimony, spoke of incidents and things which were within their own knowledge. All the direct evidence, as to the construction and condition of the spark arrester, was given by the defendant's witnesses who saw and examined the spark arrester, and who, in the nature of things, would be or would

have been the only eyewitnesses to the character or condition of the spark arrester. No one of the plaintiff's witnesses gave any evidence founded in their own knowledge as to the construction or condition of the spark arrester. There was no conflicting evidence as to the spark arrester's condition, except such as may be said to be circumstantial or inferential from the defendant's testimony. There was nothing in the evidence to show that the spark arrester was not of the most improved plan, and that it was not at the time in good repair and working condition. Much of the adverse testimony as to the defective condition of the spark arrester appeared on the trial in the suggestions and contentions in argument of zealous counsel for the plaintiff.

On the trial the evidence showed that some of the bagging on some of the cotton bales had been cut open on top of the exposed end of the cotton bales by cotton samplers, and more or less cotton protruded from the open space cut in the bagging and made the bales so cut more liable to catch fire if sparks from the engine fell upon the exposed places. Such evidence was only suggestive of a condition or incident which might show contributory negligence. The evidence, which seemed to be strongly persuasive, if not conclusive, on the issue of contributory negligence, shows that the compress company, recognizing the danger to which the cotton bales, remaining exposed and uncovered on the platform, were exposed from falling sparks of passing engines, took upon, or imposed upon, itself the duty of employing a servant, whose only duty seems to have been to keep water in the barrels on the platform for use in extinguishing fire and looking out, as the plaintiff's witness himself says, "for falling fire sparks." The testimony of Butler Napoleon, a witness for the plaintiff company, was as follows:

"Q. Had you been at the compress that day before the fire? A. Just about 15 or 20 minutes before. Q. Had you done any work in the compress building that morning? A. I had filled some barrels with water. Q. What was your duty about the compress? A. To keep the barrels filled up and keep a lookout for fire, and clean up. Well, yes, sir; those were my duties, to notice for sparks and cinders. And I happened to slip off from the captain and go to dinner that day, and the train came in there on me, and I know it was my place to stop, and that is the reason I stopped, because it is my business to look out for sparks and watch them. But I did get back to the burning. I couldn't get back to the compress before the fire was all over everything. Q. You say you were some distance from the compress when the fire occurred? A. Yes, sir. Q. You had gone out to dinner? A. No, sir; I had done eat my dinner, I had started home. Q. You say that was your business to look out for fire, but you didn't see Capt. Miller, and you were slipping away? A. Yes, sir. Q. And you passed the engine on the track about 200 yards away from the compress? A. Yes, sir. Q. You were slipping off home were you? A. Yes, sir.

Further on in his testimony, Butler says: "The captain always told me to keep a lookout for sparks when the engine was running on the compress track." Before this fire (or the fire in question) he had several times put out fire sparks that flew on the cotton. He says, if he had been up there with a bucket of water, that he could have done something to put the fire out. He says it was a matter of general talk and notoriety that there was danger from flying sparks, when there

153 F.—50

was switching in there, on account of cotton being close to the track, and it was his special duty to watch the cotton.

The evidence shows that Napoleon Butler was specially employed to use his activities on the platform in protecting the cotton from the very falling sparks which seem to have set fire to the cotton, and he had slipped away and was quite a distance from the compress building when he first saw the fire consuming the cotton. Butler's testimony shows that the compress company, in recognition and appreciation of such duty—of a reciprocal nature, as I have mentioned—as was suggested and imposed on it by or in the compress company's knowledge of and consideration for the conditions and environments which were apparent to the compress company, and which, necessarily, attended the business activities of the company's management in handling its patrons cotton on the platform.

The evidence shows that the management of the compress company in responding to an estimate of its sense of duty, to itself and the owner of the compress building, as well as to its duties as the bailee of the several owners of the cotton which was destroyed by fire, kept a man especially appointed to discharge a service which it seems, in its own estimate of things, it fairly owed to all persons concerned. Treating the compress company as such a bailee, it seems that a failure to have had such a service or duty, as was assigned to Butler, performed by some of its servants, would have been, under the circumstances, a signal omission of the bailee's obligations. If the compress company had been the actual owner of the cotton, and it was now suing the defendant railway company for damages, because of its negligence in setting the cotton on fire, I think the facts relating to Butler's neglect of the special duties assigned to him would show a damaging state of facts against the legal right of the compress company to recover damages for negligence of the railway company. The service or duty which the compress company assigned to Butler seems to show or illustrate that company's view and interpretation of the nature of its obligations, under all the circumstances, as a bailee. It may be that the defendant railway company did not know of the presence of Butler, or of the special duties which had been assigned to Butler by the compress company; but the assumption by the compress company of such a duty as was assigned to Butler is very persuasive to show that it rightfully assumed some of the risks in the dangers of the situation. It is persuasive, too, to show that the compress company recognized, and was responding fairly for itself to, the nature of the reciprocal relations and obligations imposed on either of the litigant companies (treating the compress and railway companies as the litigants herein) by the apparent dangers inherent in the environments of the situation.

A new trial is granted.